*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* W. R. NORTH, Minor.

UNPUBLISHED
August 13, 2019

No. 346469
Oscoda Circuit Court
Family Division
LC No. 17-000652-NA

Before: CAVANAGH, P.J., and STEPHENS and O'BRIEN, JJ.

PER CURIAM.

Respondent-father appeals as of right the trial court's order terminating his parental rights to the minor child, WRN, under MCL 712A.19b(3)(c)(*i*) (conditions leading to adjudication continue to exist); (g) (failure to provide proper care or custody); and (j) (reasonable likelihood of harm if returned to parent). We affirm.

## I. BACKGROUND

In April 2017, the Department of Health and Human Services (DHHS) filed a petition requesting that the trial court take jurisdiction over WRN because her mother's whereabouts were unknown, and respondent was incarcerated for operating a vehicle while intoxicated while on probation. WRN was placed in foster care, and shortly thereafter, her mother voluntarily terminated her parental rights. Respondent pled to allegations in the petition acknowledging that he was unable to provide WRN with proper care and custody. He also acknowledged that he did not have a significant relationship with WRN, given that he had been incarcerated nearly all her life. He was given a parent agency treatment plan (PATP).

In accordance with his PATP, respondent attended inpatient substance abuse treatment while incarcerated. Upon release, he received outpatient substance abuse treatment, mental health counseling, visitations, and parenting classes. He completed a psychological evaluation, and obtained employment and housing. At a September 2017 hearing, the court commended respondent for how quickly he progressed. However, respondent relapsed into substance abuse resulting in a probation violation and a brief re-incarceration. While in jail, respondent lost his employment, housing, and car insurance, and had approximately $20,000 in court costs and fees in several different counties related to his prior criminal activities. Additionally, DHHS learned that respondent fathered two other children during the pendency of this case. Citing these worsened circumstances, DHHS filed a supplemental petition for permanent custody of WRN.

At the termination hearing, the court heard from clinician Dr. Don Boyd, respondent's parole officer, respondent's ex-sister-in-law, the mother of respondent's ex-girlfriend, the DHHS caseworker, and respondent. Dr. Boyd testified that while respondent had the capacity to nurture and care for his children, it was his opinion that respondent's impulsivity and struggle to deal with ongoing life stressors would lead respondent to "throw in the towel" and engage in "various forms of acting out, poor judgment, and substance use." Respondent's parole officer testified that respondent was being monitored for four cases and that he was not keeping up with payments. The officer testified that respondent could face jail time for future violations and for not paying court costs and fines. The caseworker testified that she was concerned about the potential that respondent could be incarcerated again after WRN's return home, and was concerned that respondent never showed the ability to maintain his own home or pay his bills.

The lay witnesses were consistent in their testimony that respondent was bonded with and appropriate toward WRN. Both women testified that they had allowed the respondent to live in their homes either in exchange for chores or rent free and that they had observed him with WRN. The ex-sister-in-law expressed concern however, that respondent was not consistent with WRN, was not home a lot with the child, and had a lot of people in and out of WRN's life. Respondent testified on his own behalf. He noted his progress throughout the case, bond with WRN, and his financial plan to care for WRN as well as his other children, which involved employment, saving, and sharing the financial burden with his girlfriend.

The trial court concluded that respondent's lack of housing, substance abuse issues, failure to show that he could financially care for all of his children, and failure to comply with the PATP supported the termination of respondent's parental rights under MCL 712A.19b(3)(c)(*i*), (g) and (j). It further found termination to be in WRN's best interests.

## II. STATUTORY GROUNDS

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). The trial court's finding that a ground for termination has been established is reviewed for clear error. MCR 3.977(K); *In re Rood*, 483 Mich 73, 90-91; 763 NW2d 587 (2009) (opinion by CORRIGAN, J.). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004). "Appellate courts are obliged to defer to a trial court's factual findings at termination proceedings if those findings do not constitute clear error." *Rood*, 483 Mich at 90.

The trial court terminated respondent's parental rights pursuant to MCL 712A.19b(3)(c)(*i*), (g), and (j), which provide in relevant part:

(3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

* * *

-2-

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds . . . the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

* * *

(g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

* * *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

Termination of parental rights is proper under MCL 712A.19b(3)(c)(*i*) when "the totality of the evidence amply supports that [the parent] had not accomplished any meaningful change in the conditions" that led to the court taking jurisdiction over the minor, *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009), and "there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age," MCL 712A.19b(3)(c)(*i*).

At the time of WRN's removal, respondent's incarceration prevented him from being able to provide care and custody for WRN and the initial barriers to reunification were identified as "parenting skills" and "substance abuse." Respondent was required to remain substance-free, including alcohol, was not be around anyone using substances, and was required to submit to random drug screens. Additionally, he was required to participate in a psychological evaluation and follow all recommendations, participate in parenting classes, and participate in supervised parenting-time visits.

At the time of the termination hearing, substance abuse remained an issue for respondent, and because it was also tied to his probation, his substance use caused him to be re-incarcerated during the pendency of the case. Respondent's incarceration in turn affected his ability to maintain employment or to obtain appropriate housing for WRN. This cycle impeded his ability to deepen his bond with the child, and to improve his parenting skills. Each relapse resulted in additional fees and fines, as well. The court did not err in determining that after more than 17 months since WRN's removal, respondent failed to accomplish any meaningful change in the conditions that led to the court taking jurisdiction over WRN. *Williams*, 286 Mich App at 272. Given these circumstances and that over 182 days had passed since respondent's disposition, the trial court did not err by determining that there was no reasonable likelihood that the conditions would be rectified within a reasonable time considering WRN's age. MCL 712A.19b(3)(c)(*i*).

Having determined that at least one ground for termination existed, we need not address the court's additional grounds for termination. *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009).

## III.  BEST INTERESTS

This Court reviews the trial court's determination of best interests for clear error. *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *BZ*, 264 Mich App at 296-297. "Appellate courts are obliged to defer to a trial court's factual findings at termination proceedings if those findings do not constitute clear error." *Rood*, 483 Mich at 90.

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *Olive/Metts*, 297 Mich App at 40. When considering best interests, the focus is on the child, not the parent. *In re Moss*, 301 Mich App 76, 87; 836 NW2d 182 (2013). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *Id*. at 90.

"The trial court should weigh all the evidence available to determine the child's best interests." *In re White*, 303 Mich App 710, 713; 846 NW2d 61 (2014). The trial court may consider such factors as "the child's bond to the parent, the parent's parenting ability, [and] the child's need for permanency, stability, and finality." *Olive/Metts*, 297 Mich App at 41-42 (citations omitted). Other factors that the trial court may consider include "the child's wellbeing while in care, and the possibility of adoption." *White*, 303 Mich App at 714.

Respondent argues that the trial court clearly erred by applying the best-interest factors in MCL 722.23 of the Child Custody Act and focusing on the potential adoptive parents rather than the child. This contention is without merit where this Court has previously held that the trial court may consider the best-interest factors used in child custody proceedings that are provided in MCL 722.23 during termination proceedings. *In re Medina*, 317 Mich App 219, 238-239; 894 NW2d 653 (2016). Indeed, this Court has explained that "many, if perhaps not all, of the types of concerns about parental ability underlying the best interests factors of the Child Custody Act are highly relevant to a decision concerning whether parental rights should be terminated," and while the trial court is not obligated to do so, "it is perfectly appropriate . . . to refer directly to pertinent best interests factors in the Child Custody Act in making a determination concerning whether a parent has established that termination of parental rights is clearly not in a child's best interests." *In re JS & SM*, 231 Mich App 92, 101-103; 585 NW2d 326 (1998), overruled in part on other grounds *In re Trejo*, 462 Mich 341, 353 n 10; 612 NW2d 407 (2000). Accordingly, we find no error in the trial court's use of the best-interest factors from MCL 722.23 in this case.

Additionally, respondent posits that even if the application of the custody best-interest factors was not erroneous, the trial court's conclusions were erroneous, and the factors should favor respondent. However, aside from this conclusory statement, respondent fails to provide any meaningful argument or support for why he should prevail on any of the best-interest factors.

He also fails to challenge any of the trial court's conclusions. This Court is not required to unravel and elaborate on respondent's arguments and may deem the argument abandoned. *People v Cameron*, 319 Mich App, 215, 232; 900 NW2d 658 (2017). In any event, the trial court noted that WRN had a stronger emotional bond to her foster family than she did with respondent and that the foster family could provide her with the stability she needed. These factors were properly considered by the trial court and the court's findings are not clearly erroneous.

Affirmed.

/s/ Mark J. Cavanagh
/s/ Cynthia Diane Stephens
/s/ Colleen A. O'Brien